# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT McCARTY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 3261 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MENARDS, a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

The plaintiff has filed a Motion for Reconsideration under Fed.R.Civ.P. 59(e) of the court's Memorandum Opinion and Order ("Opinion") granting Menards' Motion for Summary Judgment. [Dkt. #72]. *See McCarty v. Menards*, _F.Supp.3d_, 2018 WL 3751843 (N.D.Ill. 2018). The Motion misapprehends the limited purpose of motions for reconsideration, the function of Local Rule 56.1, and the reasons summary judgment was granted in this case. And, as we discuss *infra,* it also puts out of view the obligations and responsibilities the movant has in cases such as this.

While motions for reconsideration can serve a valuable function by helping, under appropriate circumstances, to ensure judicial accuracy, *Seymour v. Hug*, 413 F.Supp.2d 910, 934 (N.D.Ill.2005), motions for reconsideration are generally disfavored. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d, 1191 (7th Cir.1990); *Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011); Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4478 (2nd ed. 2002). And for good reason. The power to reconsider a prior decision is to be exercised only in the rarest of circumstances and only where there is a compelling reason—for example, a change in, or clarification of, law that makes clear that the earlier ruling was erroneous, *Solis v. Current*

*Development Corp.,* 557 F.3d 772, 780 (7th Cir.2009); *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 571–72 (7th Cir.2006), or where the court made a significant mistake. *United States v. Ligas,* 549 F.3d 497, 501 (7th Cir.2008). It is not a mechanism that allows a party to revisit strategic decisions that prove to be improvident, to make arguments that could and should have been made in prior briefing, to express mere disagreement with a decision of the court, or to reprise or "rehash" arguments that were rejected. *Goplin v. WeCONNECT, Inc.*, 893 F.3d 488 (7th Cir. 2018); *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

Not surprisingly, a motion for reconsideration under Rule 59(e), like any motion for reconsideration, also serves a limited function. It must be based on a manifest error of law or fact or on newly discovered evidence. *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013); *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir.2012). It is not an opportunity "to advance arguments or theories that could and should have been made before the district court rendered its judgment." *Miller v. Safeco Ins. Co. of America*, 683 F.3d 805, 813 (7th Cir. 2012). *See also Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018); *Winfield v. Dorethy*, 871 F.3d 555, 559 (7th Cir. 2017).

Nonetheless, motions for reconsideration continue to be routinely filed, prompting the Seventh Circuit to remind the Bar that "in a passage quoted by other courts literally hundreds of times, as the late Judge Shadur wrote thirty years ago '[a] court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018). Significantly and tellingly, nowhere in the plaintiff's 12-page brief is there a mention of the phrase "manifest error of law" or any reference to "newly

discovered evidence." There is merely the insistence that the court got it all wrong, and that the grant of summary judgment to Menards was a serious mistake. As we show below, the motion for reconsideration is, at bottom, nothing more than an improper cry for a "do-over." *Hall v. Village of Flossmoor, Ill.*, 520 Fed.Appx. 468 (7th Cir. 2013).

## ARGUMENT

## I.

The plaintiff's first objection to the summary judgment Opinion has to do with his *admitted* failures to follow Local Rule 56.1. As discussed at length in the Summary Judgment Opinion, plaintiff's initial Local Rule 56.1 submission glaringly and admittedly violated the Rule. It was a rambling, thirty-page document that did not directly or simply respond to the defendant's straightforward, eight-page Statement of Uncontested Facts. The plaintiff's response did not include the defendant's factual assertions – which is customary but not required, Local Rule 56.1(b)(3)(a) – meaning the quite excessive length of the Response by comparison to the defendant's straightforward Factual Statement was entirely the plaintiff's handiwork.[1]

To be sure, perhaps one could parse any individual paragraph in isolation and pick out a pertinent fact. But for a party, in essence, to demand that the court do this over thirty pages of a rambling response to a Statement of Material Fact subverts the very purpose of the Local Rule, which, as discussed at length in the Opinion, is to insure that judges need not sift through the record hunting for facts on a party's behalf, like a pig hunting for truffles. *United States v. Dunkel,* 927 F.2d

---

[1] At a hearing on May 23, 2018, the plaintiff conceded that he "incorrectly" and "inadvertently did not comply with the local rules as to the Response to the Uncontested Statement of Facts" of Menards. (Dkt. # 65). The plaintiff's Motion "recognized [counsel's] errors and sought permission to correct those errors." Plaintiff's counsel forthrightly acknowledged that he "should have correctly understood the requirements of the Statement of Additional Facts and apologize[d] for his errors." [Dkt. #65].

955, 956 (7th Cir.1991); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015). All the plaintiff's tactic did is make it more difficult for the court to rule in anyone's favor, let alone the plaintiff's. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . ."). When the asserted fact is, "it was noon," a primer on how clocks work is not a concise or proper response.

Of course, the court could have simply deemed all of the defendant's factual assertions in his noncompliant response to Menards' Statement of Facts admitted. *See, e.g., v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005). Courts are entitled to expect strict compliance with the Local Rule regarding summary judgment. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir.2011); *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3d 626, 630 (7th Cir.2010).[2] But instead of deeming the defendant's facts admitted, the court granted the plaintiff's request to file a Rule-compliant response to Menards' Statement of Uncontested Facts. The long and short of it is that the plaintiff didn't follow Local Rule 56 and cannot foist his failings on the court with a Rule 59(e) motion. A Rule 59(e) motion does not "provide a vehicle for a party to undo its own procedural failures . . . ." *Bordelon v. Chicago School Reform Bd. of Trustees,* 233 F.3d 524 (7th Cir.2000). Hopefully, additional examples and commentary will suffice to demonstrate that plaintiff's misapprehensions and violations of Local Rule 56 did not themselves result in the granting of Menards' Motion for Summary Judgment.

---

[2] Courts have the discretion to demand strict compliance with the Local Rules in order to promote the clarity of summary judgment filings. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011). "These rules were not intended to provide a maze of technical traps to complicate and delay litigation without advancing the merits." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

## II.

The Opinion provided a handful of examples of admitted Rule violations by the plaintiff; but, contrary to the contentions in the Motion for Reconsideration, allowing his counsel as a matter of the court's discretion to file a document that in essence sought to correct the pervasive mistakes in plaintiff's original filing did not somehow sanitize the original violations. (Transcript of hearing of 5/30/18). The discretionary decision to allow, over Menards' strenuous objection, the filing of a Rule-compliant response to Menards' Local Rule 56 statement did not mean the balance of the seriously flawed initial submission was fine. [Dkt. #74, at 2]. Indeed, even "[s]ubstantial compliance is not strict compliance." *Ammons*, 368 F.3d at 817. To accept the plaintiff's present contention would have required the court to have picked among a long series of admittedly noncompliant factual submissions and to decide on its own which, *if any*, were compliant with the Local Rule. But that would have impermissibly required the court to become in effect a lawyer in the case, and thus would be contrary to the adversary nature of our system of justice. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993); *United States v. Williams,* 892 F.3d 242, 247 (7th Cir. 2018).

Local rules like Local Rule 56 serve an important purpose in ensuring that the adversary system functions as it should. *Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989). A court does a disservice to the system, and to one party when it assists the other party in the presentation of its case. Even if a judge were to endeavor to assist both sides, it could never do so equally, and some unfairness would result. Judge Kleinfeld has put the matter in proper perspective:

> Requiring the district court to search the entire record for a genuine issue of fact, even though the adverse party does not set it out in the opposition papers, is also profoundly unfair to the movant. The gist of a summary judgment motion is to require the adverse party to show that

it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. The opposition sets it out, and then the movant has a fair chance in its reply papers to show why the respondent's evidence fails to establish a genuine issue of material fact. If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the respondent, performing the lawyer's duty of setting forth specific facts showing that there is a genuine issue for trial. The movant is then denied a fair opportunity to address the matter in the reply papers.

*Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001).

At the hearing on the Motion on May 30, 2018, Menards objected to the plaintiff's request to excuse "strict compliance with Rule 56" and his request that he be allowed to file a Rule-compliant factual statement.[3] The plaintiff was insistent that he had "made a mistake" (Tr. at 2) and said he "wanted to be in compliance with everything." (Tr. 5). The court noted that it had discretionary authority to allow plaintiff's counsel to, in effect, correct his claimed "mistake." (Tr. 8). And that is what he was allowed to do with a new filing. It bears repeating that the court never intended that not only could plaintiff's counsel file a Rule-compliant Statement of Facts, but that, *in addition*, that which was admittedly not done in accordance with the Local Rule would *also* now be deemed proper and that the initial document would be considered as though it were Rule-compliant. Meaning, of course, is determined by context, *Hawks v. Hammill*, 288 U.S. 52, 57 (1933)(Cardozo, J,); (7th Cir 2017); *United States v. Sewell*, 780 F.3d 839, 845 (7th Cir. 2015); *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550 (7th Cir. 2013), and the context here does not support the plaintiff's reading.

The plaintiff's argument overlooks the normal meaning to the word "supplement." A "supplement" is "[s]omething added to complete a thing, *make up for a deficiency*" or "'[a] section

---

[3] Counsel for Menards "strenuously" objected, saying: "Your Honor. It's simply too little, too late. Your Honor expects strict compliance with Rule 56. Your prior opinions have made that abundantly clear.") Tr. At 2)

added to a ... document to give further information *or to correct errors*.' *The American Heritage Dictionary of the English Language,* 1292 (1981)." *In re Olde Prairie Block Owner, LLC*, 2010 WL 5141354, at *3 (Bankr. N.D. Ill. 2010)(Emphasis supplied). *Accord DCK TTEC, LLC v. Postel Indus., Inc.*, 602 F. App'x 895, 897 (3rd Cir. 2015)(supplementation is required to correct statements or disclosures when the information that has been provided by a litigant proves to be incomplete or incorrect); *WPS Inc. v. Am.Honda Motor Co. Inc.*, 2017 WL 4216159, at *2 (D.S.C. 2017). Supplementation under the Federal Rules of Civil Procedure generally means correcting inaccuracies. *Mullin v. Hyatt Residential Grp., Inc.*, 2015 WL 1502379, at *3 (D. Colo. 2015).

It was in the sense of correcting admittedly manifest and pervasive errors in the plaintiff's summary judgment submission that the plaintiff was given permission to "supplement" his initial faulty filing. Indeed, it bears repeating that the plaintiff's own motion "recognized [plaintiff's counsel's errors]" and asked "for permission to *correct* those errors." [Dkt. #65 at ¶ 5](emphasis supplied). No one could have legitimately thought that the use of the word "supplement" required the court to go back and scour the *admittedly* improper initial submission to see whether any part of it was Rule-compliant. The purpose of allowing the additional filing was to allow for the correction of errors in an admittedly rule-deviant document, not to force a review to see what, if anything, could be salvaged from the admittedly faulty first document. That would be foolish and self-defeating – apart from improperly giving the plaintiff two bites of the apple.

The plaintiff's semantic argument carefully puts out of view the basic truth that words derive their meaning from the context in which they are used. *Livingston v. Trustguard Ins.*, 558 F. App'x 681, 683 (7th Cir. 2014). Or, as Justice Holmes put it: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to

the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425 (1918).

That the plaintiff's pervasive, noncompliance with the Local Rule did not end with paragraphs 8-10, 11-12, and 54 of the initial Statement of Uncontested Fact, is shown by the following:

¶13. In response to the plaintiff and Mr. Parks located the OSB they wanted after they got their lumber [Dkt. #55, ¶13], the plaintiff stated: "Admit with Supplement. Plaintiff admits that he and his employee, Tristan Parks, located and loaded various lumber, 2'x8's, 2'x10's, etc. and placed them in the open bed of the rental pick-up truck. The lumber was located in the west barn of the two barns in the Defendant's Outside Yard. After loading the lumber, the Plaintiff then drove the truck into the east barn, looking for 3/4" CDXs, basically plywood, (Ex. A, pg. 96). While in the east barn the Plaintiff saw a sign for 3/4" OSBs (oriented strand boards) at a considerably cheaper price and decided to use them instead. (Ex. B, pg. 58). The OSBs can be used like CDXs. (Ex. B, pg. 58)." [Dkt. #62, at 13].

The initial sentence of the plaintiff's response is compliant with the Local Rule; the balance is not as is evidenced by even a casual reading of the contents, which is preceded by the words "admit *with supplement*." (Emphasis supplied). Other paragraphs were equally flawed. For example:

¶ 14. The defendant stated that "[p]laintiff and Parks located their desired variety of OSB– 3/4", which featured a blue-green color on it sides." [Dkt. #55, ¶ 14]. The plaintiff denied this fact, but clearly hadn't read it: "Deny. The OSBs were located by reading the signs and not by colors. When they were located, Plaintiff and Tristan Parks exited the vehicle. (Ex. A, pg. 102, Ex. B, pg. 57) It is not the color but the sign that tells you 3/4", 4'x8' OSBs (Ex. B, pg. 59)." [Dkt. #62, at 14]. Nowhere in the defendant's simple assertion does it say that the plaintiff and his employee located the OSB by color. The defendant's reference to the color is clearly intended as an easy way to differentiate the boards plaintiff wanted from the boards plaintiff moved in subsequent paragraphs. [Dkt. #55, ¶¶ 16, 21-25].

¶21. The defendant asserted that, because a few of the sheets of OSB were undesirable, the plaintiff and Mr. Parks moved them to neighboring piles. [Dkt. #55, ¶21]. The plaintiff responded: "Admit with Supplement." Then, there followed: Plaintiff agrees as to Paragraph 21 that a few of the OSB sheets were of the wrong dimension or damaged and therefore the sheets were individually moved off the desired pile of boards. In moving the board, Anderson believed that an individual sheet weighs 20 pounds. (Ex. B, pg. 64) Second Assistant YSR Department

Manager, Ryan Lannert, who is 22 years old, 6', 155 pounds, (Ex. L, pgs. 6, 123) in attempting to recreate the February 13, 2017 incident, was able to move an unwanted sheet by himself and by hand. (Ex. L, pg. 103)." [Dkt. #62, ¶ 21]. Again, the bulk of plaintiff's paragraph 21 is non-responsive and irrelevant.

¶25.  The defendant stated that "[o]n plaintiff's fifth or sixth trip walking blue-green OSB sheets to the center of the neighboring orange OSB stack, Plaintiff tripped and fell." [Dkt. #55, ¶25].  This short, simple sentence inspired a page-long, three-paragraph response: "Deny with Supplement. Plaintiff never testified that he walked while sliding individually any of the four or five sheets to the right to the pile next to the desired OSB pile of 3/4" sheets. (Ex. A, pg. 108-109, 133) Only after sliding the sheets that were undesirable, did he testify that he then moved to the right to straighten out those sheets and then inadvertently placed his feet between the 2"x4"s holding the sign which caused Plaintiff to trip and fall.  (Ex. A, pgs. 121-123).

These 2"x4" boards are called "legs," (Ex. H, pg. 61) are 24 inches long, and are used to support the sign.(Ex. H, pg. 58)  First Assistant Manager of the Outside Yard,  Kevin Bender, who at the time of the February 13, 2017 accident was reassigned from the Outside Yard to the Remodeling Committee (Ex. H, pg. 39), testified that he made those signs with these 2"x4"s on a regular basis at Menards and called them "legs."  ( Ex. H, pgs. 58- 62).

Bender further testified that before the February 13 accident he had observed the Plaintiff, a "big, burly guy," move boards and agreed that if you're strong a board can be moved over to the next pile without shuffling along with it. Bender further does not know if the Plaintiff just picked up a board and slid it across to the other pile. (Ex. H, pgs. 124-125)." [Dkt. #62, ¶25]. Only the first sentence and perhaps the second are responsive or even relevant.

¶ 36.  The defendant related that Mr. Parks spoke to a Menards employee about Mr. McCarty tripping before he spoke to Mr. McCarty.  [Dkt. #55, ¶36].  In response, the plaintiff, yet again, "admitted with supplement" and said: "Parks did speak to Menards' employee Aleksandra Gudelj right after the accident, stating that his boss had tripped over the sign.  When he gave his statement to Ms. Gudelj, he further testified that he was truthful and his memory was better at the time that he spoke to Ms. Gudelj.  (Ex. B, pgs. 109-110 ).

Aleksandra Gudelj, the Front End Manager, who is responsible for investigating injuries for Defendant's Antioch store, used a written form as part of Defendant's procedure when a guest is injured.  She wrote as accurately as possible what the witness Parks stated. (Ex. I, pgs. 75, 81, Ex. Q). At her deposition, she summarized what she had written:  "They were moving plywood from one spot to the other one and that his boss tripped over the sign and fell down." (Ex I, pg. 82),

Further, Josh Parr, First Assistant General Manager to Nashaud Kazi, was standing next to the Plaintiff after the fall. Parr spoke to Parks before Kazi arrived. Parr testified that Parks told him that the Plaintiff tripped over the protruding sign, not spacers. (Ex. J, pgs. 50, 106) When General Manager Kazi came to the east barn because of the Plaintiff's injury, Parr advised Kazi, "he tripped on the sign." (Ex. E, p. 131). Kazi further stated that when he first walked to where McCarty was lying that 'I wasn't paying attention to that sign as I walked in.' To the question, 'It was only later on when you were pointed out where McCarty had tripped that you then saw it?', to which he answered: 'Yes, sir.' (Ex. E, pg. 132)." [Dkt. #62, ¶36].

This is a three-paragraph response to a simple statement, and only the first sentence – or perhaps the first two – actually addresses the statement.

¶47. The defendant simply stated that Mr. Parks didn't know who pulled the sign out either. [Dkt. #55, ¶47]. The plaintiff "admitted" but "with supplement;" the supplement included instruction on how to down stock boards and move in a lumber shed: "While Tristan Parks did not know who caused the sign to be protruding out, Second Assistant YSR Manager Lannert testified it was '*likely*' caused or left out by a lazy Menards team member after downstocking. (Ex. L, pgs. 118-119)(Emphasis supplied).

Downstocking involves the use of a fork lift to replenish a pile of boards that is low. The sign in front of the pile is first moved out of the way by the driver who then using the fork lift removes the low pile of boards, placing them aside. The fork lift driver then obtains a larger pile of boards of the same size and places them in the vacated spot. The driver then using the fork lift retrieves the smaller pile of boards that had been placed aside and now places them on top of the new, larger pile of boards. The sign is then to be replaced where it originally was. (Ex. F, pgs. 78-79)." [Dkt. #62, ¶47].

As already indicated, there are 30 pages of this.

While it is perhaps true, as plaintiff now says, that, among those 30 rambling pages, there are

a number of shorter 2- or 3-sentence responses, even many of them are not compliant with the Rule. For example, when the defendant, correctly, states that Mr. McCarty *testified* that he does not know who pulled out the sign [Dkt. #55, ¶ 44], plaintiff neither admits nor denies unequivocally that fact, although whether he did or he didn't so testify is an undeniable fact. Rather, as was done throughout, he "admit[s] *with supplement*," (emphasis supplied), and then summarizes the testimony of one of the store employees regarding how *he* conjectured the sign might have been left askew. [Dkt. #62, ¶ 44]. But this defeats the very purpose of Local Rule 56.

This sort of equivocal approach to a simple statement of facts is not what the Local Rule contemplates or allows. It is certainly unhelpful to the achievement of the clarity that is the desideratum of the Rule. Mr. McCarty should have either admitted he didn't know how the sign got out of place or said he did. Local Rule 56.1 makes no allowance for anything like the plaintiff's most common qualified response, "admit with supplement." The plaintiff's strategy in this case defeats the very purpose of the Rule and confuses rather than simplifies. When the asserted fact is, "it was 12:00 p.m.," a primer on how clocks work is not a concise – or proper – response.

The preceding additional examples and commentary demonstrate that plaintiff's extensive misapprehensions and violations of Local Rule 56.1, which ultimately set the stage for the granting of defendant's summary judgment.

## III.

From the discussion of his admitted failure to follow Local Rule 56.1, the plaintiff moves on to what he claims are 20 supposed factual errors in the Opinion. [Dkt. #74, at 2-6].[4] Notably, nowhere in this list are any citations to either of plaintiff's factual submissions. If they weren't in the

---

[4] None qualify as "newly discovered evidence."

plaintiff's statement of additional facts – the only Local Rule 56-compliant statement he filed – naturally, those facts need not have been considered, *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015); *FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005), and are not properly part of a Rule 59(e) motion, especially where, as discussed above, the plaintiff's initial noncompliant filing ran 30 discursive pages, and the defendant's straightforward, uncomplicated Statement of Uncontested Facts spanned but 8 pages.

It must be emphasized that summary judgment was not granted to Menards because of the plaintiff's extensive violations of Local Rule 56. And, nowhere does the plaintiff, although referring to his initial response to the defendant's Statement of Uncontested Facts, point out what alleged fact or paragraph in that document would, if considered by the court, have made improper the grant of summary judgment to Menards. Instead, there is simply a blanket referral to plaintiff's initial, noncompliant, rambling, supposed response to Menards' Statement of Facts. But, that is not enough to show that manifest error – indeed any error – was committed by the court in ruling on Menards' Motion for Summary Judgment. In other words, even if a line-by-line review of the plaintiff's second submission had not been undertaken, reconsideration would still be improper.

It cannot be too strongly stressed that the plaintiff's Motion for Reconsideration has not even attempted to show that one or more statements in the extensive, admittedly improper response to the defendant's Statement of Uncontested Facts made or might have made improper the grant of summary judgment to Menards. That omission is all the more significant given that the burden is on the plaintiff as the party claiming error to show some prejudice. *Puckett v. United States*, 556 U.S. 129, 141 (2009). Absent a showing of prejudice, reversal is improper. *McNary v. Lemke*, 708 F.3d 905, 921 (7th Cir. 2013). Here, the plaintiff's counsel has done nothing to show that his client has

in fact been affected by the court's claimed non-consideration of the admittedly improper and discursive response to the defendant's Statement of Uncontested Fact. There is simply a claim of error without the slightest attempt to demonstrate that the claimed omission by the court had any effect on the consideration of Motion for Summary Judgment. Phrased differently, the plaintiff has not shown that the claimed failure of the court to slog through his initial, discursive, admittedly noncompliant response to Menards' Statement of Uncontested Fact affected the outcome of the case. Indeed, he has made no meaningful attempt to do so. *Cf.,Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir. 2015)("a new trial is warranted only if an instructional error caused prejudice.); *Leprino Foods Co. v. DCI, Inc.*, 727 F. App'x 464, 474–75 (10th Cir. 2018)("Because Leprino has 'failed to show any prejudice from the district court's failure,' 'we grant no relief.'"). *United States v. Ledesma*, 632 F.2d 670, 678 (7th Cir. 1980)("a failure to hold an instruction conference is not reversible error unless prejudice is shown.").

**IV**.

Having already addressed the facts in the record in the 25-page prior Opinion in this case, we shall not re-address each of these points in order to rule on the plaintiff's Rule 59(e) motion. As with the discussion regarding the plaintiff's lack of compliance with Local Rule 56.1, no more than a few examples should serve to demonstrate that the plaintiff's issues are not the proper stuff of a Rule 59(e) motion.

Plaintiff begins by misreading the Opinion and claiming that the "Court stated at page 11 of its Memorandum Order stating [sic] that McCarty likely took 5 or 6 steps to the right whereby he would have encountered the legs, writing in the footnote: 'That certainly does not rule out stepping from stack to stack. Quite the contrary.'" But nowhere on page 11 does it say that Mr. McCarty

"likely took five or six steps." [Dkt. #72, at 11]. Indeed, the Opinion stated more than once that the record evidence showed that McCarty either stepped over the legs "at least once" – he testified specifically that he did at the end of moving the boards – or perhaps as many as five or six times. [Dkt. #72, at 21, 22]. Mr. Parks, it will be recalled, testified that he stepped back and forth from pile to pile five or six times, and that McCarty did the same. [Dkt. #72, at 11]. Mr. McCarty testified that, each time he moved a board to the stack on the right, he would then "*come back* and pick up another sheet . . ." [Dkt. # 72, at 11 n.2](Emphasis supplied). As was stated in the Opinion, moving from stack to stack does not rule out stepping from stack to stack. Quite the contrary. And there is no dispute that Mr. McCarty negotiated the legs of the sign at least once, as the Opinion stated, and as Mr. McCarty concedes in his Rule 59(e) brief. [Dkt. #74, at 3].

Plaintiff also takes issue with the statement that "[Mr.] McCarty would have passed different piles of boards and both [Mr.] McCarty and [Mr.] Parks 'had to see' the protruding sign and legs." [Dkt. # 74, at 3]. As stated in the Opinion, the two looked at the signs as they drove through the shed in order to find the OSB they wanted. They testified to as much in their depositions. And, as the Opinion further said, plaintiff had to be right next to the sign and stepping over it at least once while he moved the boards. The sign was knee-high and the legs were four inches wide. [Dkt. #72, at 18-19]. All this went to the obviousness of the hazard.

While plaintiff concedes that Mr. Lannert testified that there were inspections for tripping hazards every day and that when discovered they were taken care of, he complains that the court failed to note that there were "no inspection *procedures*" for tripping hazards and there was no specific policy about how signs were to be pushed back. [Dkt. #74, at 4-5]. This argument borders on the ridiculous. If the evidence is, as plaintiff concedes, that there were daily inspections for

tripping hazards and they were taken care of, what possible difference could it make in the end whether there were specific instructions – presumably written, but the plaintiff does not say – on how to push a sign in? What the Supreme Court said in the different context of *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 115-116 (1991) could apply here equally: "[it is] so 'obvious' as to not require explanation."

Plaintiff also criticizes the photo included in the Opinion to show the layout of the incident. He argues that the court should have considered other photos in the record which did not show the sign's legs. [Dkt. #74, at 4]. The court did consider those photos, but they are not taken from the perspective of a man standing right next to the sign and stepping over it once or multiple times. They are taken from several feet directly in front of the sign and accurately show the location of the three relevant stacks of lumber and the sign. They were the plaintiff's own exhibits.

Plaintiff claims that the court said that Mr. Lannert "testif[ied] that he *guessed* a team member had left the sign and legs out." [Dkt. #74, at 4](Emphasis supplied). That's correct, because there is no evidence how the sign was left askew or who was responsible. But as a guess is not evidence as the Opinion explained at length, Mr. Lannert repeated seven or eight times that he had no idea how the sign got that way. Indeed, no one did, as the Opinion made clear. When repeatedly pressed, Mr. Lannert finally yielded and said it was likely an employee did it *if* he had been down-stocking. [Dkt. # 72, at 13-15]. But, as the Opinion stated, there was no evidence that any down-stocking had occurred that day. Mr. Anderson testified that everything was in its proper place first thing in the morning. [Dkt. # 72, at 15-16]. He testified that he didn't know of any down-stocking that occurred after that, and there probably wasn't any. [Dkt. 55-6, at 159]. Notably, plaintiff fails to acknowledge the evidence that customers had left signs askew in the past. [Dkt. #72, at 16, 23, 25]. He did say he

couldn't swear there wasn't any down-stocking that day, but, as the Opinion pointed out, that's not evidence there was.

## V.

Mr. Lannert's testimony that he didn't recall there being any down-stocking during that day, but that there could have been, is speculation, [Dkt. #62-12, at 122], and speculation does not count. *See Ray v. Clements,* 700 F.3d 993, 1017 (7th Cir. 2012)*; In re Cohen,* 507 F.3d 610, 614 (7th Cir.2007); *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir.2005); *United States v. Landry,* 257 F.2d 425, 431 (7th Cir.1958); *Smith v. Lynch*, 115 F. Supp. 3d 5, 13–14 (D.D.C. 2015); *Hunt ex rel. Chiovari v. Dart,* 2009 WL 1162133, 8 (N.D.Ill. 2009).

Indeed, underlying almost the entirety of the Motion for Reconsideration is the plaintiff's failure to acknowledge the significant difference between evidence and speculation and hunches. The law does not recognize mere possibilities as a basis for liability. *Kansas v. Carr*, _U.S._, 136 S.Ct. 633, 643 (2016). The same principle also finds expression in the repeated holdings that the law does not deal with mere possibilities, *Cannon v. Lockhart*, 850 F.2d 437, 441 (8th Cir. 1988), for in an abstract or metaphysical sense, "anything is possible." *Young v. Davis*, 860 F.3d 318, 331 (5th Cir. 2017). Thus, neither speculation nor metaphysical possibilities or conjecture are enough to defeat a properly supported factual argument, either on summary judgment, at trial, or otherwise.[5]

---

[5] *See Moreland v. Nielsen*, _F.3d_, 2018 WL 3868675 (7th Cir. 2018)(although Plaintiff "believes" the agency interpreted its regulations to punish her, there is "no evidence" to support her belief); *Cooney v. Casady,* 735 F.3d 514, 519 (7th Cir. 2013)("only speculation and conjecture could result in a finding that the defendants conspired to deprive Cooney of her rights; this is not enough."); *Joyce v. JC Penney Corp.*, 389 Fed.Appx. 529, 531 (7th Cir. 2010)("speculation about causation would not defeat summary judgment" even where some of plaintiff's doctors were unwilling to rule out the possibility that the collision worsened earlier injuries); *Cannon*, 850 F.2d at 441 (the law does not deal with possibilities); *Koon Chun Hing Kee Soy & Sauce Factor, Ltd. v. Star Mark Mgmt, Inc.*, 2007 WL 74304 at *10 (E.D.N.Y 2007)(mere speculation or 'metaphysical' possibilities alone do not suffice to counter specific evidence).

On summary judgment, once a movant has put forward factual material in support of an argument, it must be countered with more than speculation or "metaphysical" possibilities." *DiStiso v. Cook,* 691 F.3d 226, 230 (2d Cir.2012). *See also Great Am. Ins. Co. v. USF Holland Inc.*, 937 F. Supp. 2d 376, 385 (S.D.N.Y. 2013). Summary judgment looks to objective standards, not theoretical possibilities. *Matsushita Elec. Ind. U.S. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is a principle that was emphasized in the Opinion – and which case after case has held. [Dkt. # 72, at 2, 17, 23, 24 25]. In addition to the cases cited above and in n. 5, *see Hamer v. Neighborhood Housing Svcs of Chicago*, 897 F.3d 835, 840 (7th Cir. 2018)("*Speculative assertions* about decision makers' knowledge are insufficient to establish a genuine dispute about a material fact.")(Emphasis supplied); *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016); *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 2018 WL 3913121, at *7 (7th Cir. 2018)("Factual allegations "that are 'merely consistent with' a defendant's liability" do not pass the critical "line between possibility and plausibility of 'entitlement to relief.' "); *Komulainen v. Montenay Power Corp.*, 2008 WL 919645 at *4 (E.D.N.Y. 2008)(remote possibility that the defendant caused the alleged harm could not defeat summary judgment).

Menards is correct in asserting that the evidence in this case does not support the plaintiff's speculative and tendentious guess as to what happened. There is no evidence that an employee was down-stocking at some earlier time in the day or that an employee left the sign askew. There was evidence that customers had left signs askew in the past, although the plaintiff ignores that fact. And, even if there had been down-stocking that day, the mere possibility that an employee was responsible for the improper location of the sign would not carry the day for the plaintiff.

## VI.

Contrast the record here with the recent case of *Pollak-Becker v. Kmart Stores of Illinois, LLC*, 2018 WL 3965317 (2nd Dist. Ill. App. Ct. 2018). There, the plaintiff tripped over a shopping basket near the check-out aisles in defendant's store. The Illinois Appellate Court found that summary judgment was improper because the plaintiff presented evidence that only employees were in the area in the narrow, two-minute time frame during which the basket could have been left on the floor. 2018 WL 3965317, at *1 (¶¶5-6), *6 (¶26). Here, the plaintiff presented no comparable evidence.

Plaintiff also suggests that Mr. Andersen was lying when he testified that the sign was not out of place the morning of February 13th when he "walked around with Tommy that day." [Dkt. # 74, at 5]. Plaintiff points out that Tommy Shelvin testified that he had not walked around the lumber shed that day, and, so, the court supposedly failed to grasp a genuine issue of triable fact. [Dkt. #74, at 5]. But, plaintiff is mischaracterizing the record. Mr. Lannert never testified that he "walked around with Tommy" that morning. Plaintiff's counsel did. [Dkt. # 62-6, at 136]. Mr. Anderson said he "sometimes" walked around with Tommy, and didn't remember if he did that day, although he thought it was likely. [Dkt. # 133-36]. He remembered specifically that everything was in place [Dkt. #62-6, at 137], which is a material fact, not who accompanied him, if anyone did.

The plaintiff's motion for reconsideration continues in this vein, relying on gossamer and abstract speculation but not coming forward with any evidence. In that respect, it is no different than his original response. But, as all the cases hold, a party cannot avoid summary judgment by relying on speculation about what could have happened. And a party cannot employ a Rule 59(e) motion to simply rehash arguments already raised and rejected in the court's ruling. *Vesely*, 762 F.3d at 666.

And that is all the plaintiff has done.

## VII.

We need not dwell on the portion of the plaintiff's current brief entitled "Analysis." Aside from *Dunn v. Menards* and *Barrios v. Fashion Gallery*, none of the cases were cited in the original brief. [Dkt. # 61]. As the case law applicable to Rule 59(e) motions makes plain, a Rule 59(e) motion is not a vehicle for raising new arguments. *Cehovic-Dixneuf*, 895 F.3d at 932; *Winfield*, 871 F.3d at 559; *Miller*, 683 F.3d at 813.

It is unclear what is meant by the plaintiff's allegation that the court did not deal with his negligence claim. [Dkt. #74, at 7]. In fact, 25 pages of the Opinion dealt with it. If the Motion for Reconsideration is attempting to demonstrate a manifest error of law – again, the Motion ignores that requirement and the applicable law – it is unsuccessful. A manifest error occurs when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent. *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015). Manifest error is not demonstrated by the disappointment of the losing party. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir.2000). Instead of making the required showing, the plaintiff impermissibly relies on speculation about how the sign might have been left out of place by an employee if there had been downsizing. But, as has been said, speculation is insufficient to stave off summary judgment.

The plaintiff's Motion also demonstrates a misapprehension of the law as to whether a hazard is open and obvious. It is an objective, as opposed to subjective, standard. *Racky v. Belfor USA Grp., Inc.*, 2017 Ill.App. 153446, 83 N.E.3d 440, 467 (1st Dist. 2017); *Dunn v. Menard, Inc.*, 880 F.3d 899, 908 (7th Cir. 2018). As such, it doesn't matter if plaintiff didn't see the sign or if Mr. Kazi thought someone could be distracted. Objectively, the plaintiff saw the signs as he drove into the

shed and looked for the OSB he wanted. He saw them as he walked toward the piles of wood. He stood next to the sign he tripped over and stepped over it at least once and perhaps as many as five or six times before he tripped.

Moreover, as the Opinion pointed out, the plaintiff was no longer engaged in moving the boards or straightening them when he tripped. His distracting task of moving back and forth between the stacks as he moved the lumber was at an end. When he finally tripped he was neither straightening boards nor moving them. He was walking and, perhaps, not looking down as was the case with the woman in *Bruns v. City of Centralia*, 2014 Ill. 116998, 21 N.E.3d 684, 691 (2014), who tripped on an uneven sidewalk while focusing on steps and a door. There was no liability there, of course, because as the Opinion pointed out, "the mere fact of looking elsewhere does not constitute a distraction." [Dkt. #21]; *Dunn*, 880 F.3d at 909; *Bruns*, 21 N.E.3d at 692.

Plaintiff complains the court incorrectly characterized him as insisting on constant surveillance for tripping hazards. [Dkt. # 74, at 10]. But, as the Opinion explained, that is the ultimate logic of *his* position. There is no evidence as to when or how the sign got out of place. It could have been askew shortly after 5 a.m. or right before Mr. McCarty tripped over it. Thus, nothing but near constant patrolling could have saved Mr. McCarty from tripping over the open and obvious hazard. [Dkt. #72, at 23]. *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) – which the plaintiff cites for the first time in his Rule 59(e) motion – is not to the contrary. It notes that patrols need not be "official" because "[e]mployees have frequent occasion to be in the store's aisles in any event; they have only to be alert to the possibility of spillage to notice it and clean it up promptly." 241 F.3d at 605. That's very much like what employees like Mr. Lannert and Mr. Anderson testified happened at Menards.

Plaintiff continues to argue that the defendant must be liable because it did not follow a specific tripping hazard inspection procedure. [Dkt. #74, at 10]. As the Opinion stated, the plaintiff failed to cite any cases to support his theories of liability. And even if an inspection were performed *and* recorded the morning of February 13th, because there is no evidence when the sign was pulled out, that would not necessarily have prevented Mr. McCarty from tripping over the obvious hazard. Nevertheless, in his Rule 59(e) motion, plaintiff claims that the court in *Barrios v. Fashion Gallery, Inc.* "granted summary judgment for the defendant because an inspection system was established and followed." [Dkt. #74, at 10]. This is a misreading of that Opinion, where the court only mentions the store's inspection system because the plaintiff claimed it had none. *Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 733 (N.D. Ill. 2017). There was nothing said about whether it was followed or not. Significantly, summary judgment was granted to the defendant in *Barrios* because, just as here, the plaintiff's case was built on speculation, which is forbidden by all courts, including the Seventh Circuit.

The reason for the holding in *Barrios* is apparent from even a cursory reading of that Opinion:

> "As in *Piotrowski*, prior, unreported acts of one of defendant's employees *could* have led to the shelf falling; "*but that this was the cause is only speculation, and speculation is not sufficient to survive summary judgment.*" 842 F.3d at 1039. *See also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)('We do not allow parties to send every speculation that they have to the jury despite an absence of evidence.'). In the end, there is no evidence—or, again, even any properly submitted factual assertions—regarding the maintenance, or lack thereof, of the shelves in the store. In other words, nothing to suggest that the defendant's employees didn't see to it that the shelves were stable on a regular basis. *Cf. Peterson v. Wal–Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001)('There is no evidence that any of Wal–Mart's employees were aware of the spillage that caused the plaintiff's injury and failed to clean it up; and there is, as we have pointed out, *no duty of continuous inspection*.')."

*Barrios*, 255 F. Supp. 3d at 734 (Emphasis supplied)(Parentheses in original).

## CONCLUSION

As the Opinion explained, the evidence in this case does not support the plaintiff's speculative and tendentious guess as to what thinks happened. While it is "possible" that there had been down-stocking that day – anything is possible – there is no evidence there was, and the evidence was that there probably wasn't. The plaintiff's belief, speculation, and conjecture are inadequate to defeat Menards' Motion for Summary Judgment. [Dkt. # 72, at 2, 17, 23, 24 25]. *See also Hamer v. Neighborhood Housing Svcs of Chicago*, 897 F.3d 835, 840 (7th Cir. 2018). The plaintiff's motion for reconsideration under Fed.R.Civ.P. 59(e) is denied.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 9/7/18